NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200189-U

NO. 4-20-0189

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 27, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Jane. B., Jana. B., and Jani. B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
|       Petitioner-Appellee, | ) | No. 19JA107 |
|       v. | ) | |
| John B., | ) | Honorable |
|       Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding respondent failed to properly preserve for appellate review his arguments challenging the trial court's dispositional order.

¶ 2    Respondent, John B., appeals the trial court's dispositional order making his three minor children—Jane. B. (born November 2012), Jana. B. (born September 2011), and Jani. B. (born September 2008)—wards of the court. On appeal, respondent argues the court erred in (1) making the minors wards of the court and (2) granting co-guardianship of the minors to their mother, Chenae Cooper, despite finding her unfit at the dispositional stage. We affirm.

¶ 3                   I. BACKGROUND

¶ 4              A. The Petition and Shelter-Care Hearing

¶ 5 On November 15, 2019, the State filed a five-count petition for adjudication of wardship, alleging Jane. B., Jana. B., and Jani. B. were neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)). Each count alleged the minors resided in an injurious environment when in the care of their mother, Cooper, who is not a party to this appeal. No count of the petition related to respondent.

¶ 6 According to the shelter care report, the case opened after the Bloomington Police Department executed a search warrant at Cooper's residence on November 13 at approximately 10:30 p.m. and discovered the minors home alone. The police took protective custody of the minors and subsequently found Cooper and her paramour, Andrew Thomas, to be "in possession of 4.5-9 ounces of cocaine ***." Cooper and Thomas were arrested, and respondent picked up the minors from the police station after protective custody lapsed.

¶ 7 Following the shelter care hearing, the trial court found probable cause existed for the filing of the petition and there was an immediate and urgent necessity to remove the minors from Cooper's home. As a factual basis for its findings, the court noted "Cooper was arrested and is in custody pending criminal charges." The court entered an order giving the Department of Children and Family Services (DCFS) temporary custody of the minors and granted DCFS "the authority to allow the minors to be placed with [respondent] ***."

¶ 8 B. The Adjudicatory Hearing and Order

¶ 9 At the adjudicatory hearing, Cooper admitted the fifth count of the petition, which alleged the minors were "residing in an environment injurious to their welfare in that [Cooper] has unresolved issues of substance abuse." The trial court entered an order adjudicating the minors neglected and continued the matter for a dispositional hearing.

¶ 10 C. The Dispositional Hearing and Order

¶ 11 No evidence was presented at the dispositional hearing. The State requested the court (1) find Cooper unfit—based on the fact she had yet to complete her required substance abuse treatment—and respondent fit, (2) not make the minors wards of the court, (3) grant custody and guardianship to respondent, and (4) close the case. Cooper, on the other hand, while acknowledging she had yet to complete her required treatment program, noted she was pregnant with her and Thomas's child and wished to keep the case open until she completed her services and could be found fit prior to the birth of the child. Respondent agreed with the State's recommendation but additionally stated the following: "I am in agreement that guardianship and custody should be awarded [to respondent], and if the court believes that making the children wards of the court for a brief moment in order to achieve that goal is appropriate, I would have no objection to that ***."

¶ 12 In determining it was in the minors' best interests to become wards of the court, the trial court noted "if we have an unfit parent in court, that could trigger involvement on the newborn." To avoid this involvement, the court concluded it "could make the children wards and just manage the case for a period of 90 days to see if [Cooper] has her treatment done ***." It ruled as follows:

> "The court believes it's appropriate that the minors be made wards of the court, it's in their best interests, [respondent] is fit, he has no services to do, placement is with him, court is going to vest custody with [respondent]. The court is not going to appoint [DCFS] as guardian. Guardianship will remain with the parents."

¶ 13 On March 4, 2020, the court entered a dispositional order (1) finding respondent fit and Cooper unfit, (2) making the minors wards of the court, (3) placing custody of the minors

with respondent, (4) continuing guardianship with both parents, and (5) scheduling a permanency review hearing.

¶ 14   Respondent filed his notice of appeal on April 2, 2020. Following the permanency review hearing on May 7, the court terminated the wardship and closed the case.

¶ 15   This appeal followed.

¶ 16             II. ANALYSIS

¶ 17   On appeal, respondent argues the trial court erred in (1) making the minors wards of the court and (2) granting co-guardianship of the minors to Cooper despite finding her unfit.

¶ 18           A. The Juvenile Court Act

¶ 19   The Juvenile Court Act provides a two-step process for the trial court to use when determining whether a minor should be made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. The first step, the adjudicatory stage, requires the court to consider only whether the minor is abused, neglected, or dependent. See 705 ILCS 405/2-18(1) (West 2018); *A.P.*, 2012 IL 113875, ¶ 19. The second step, the dispositional stage, requires the court to determine whether it is in the minor's and public's best interests to make the minor a ward of the court. See 705 ILCS 405/2-22(1) (West 2018). If the court determines the minor should become a ward of the court, it then must decide the proper disposition serving the health, safety, and interests of the minor and public. See *id.* The minor may be (1) "continued in the custody of his or her parents," (2) "placed in accordance with Section 2-27 [of the Juvenile Court Act,]" (3) "restored to the custody of the parent [or] parents," or (4) "ordered partially or completely emancipated ***." *Id.* § 2-23(1)(a).

¶ 20   On review, "[t]he court's decision will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by

- 4 -

selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008).

¶ 21                                B. The Trial Court's Dispositional Order

¶ 22        As noted above, respondent argues the trial court erred in (1) making the minors wards of the court and (2) granting co-guardianship of the minors to Cooper despite finding her unfit.

¶ 23                                1. *Wardship*

¶ 24        Respondent first argues the court erred by making the minors wards of the court because its decision to do so "had nothing to do with the best interests of [the minors]" and "everything to do with the best interests of *** Cooper." The State contends, and we agree, this issue is moot.

¶ 25        "An appeal is considered moot *** where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50, 851 N.E.2d 1, 7-8 (2006). Here, the relevant issue in the trial court was the propriety of the court's decision to make the minors wards of the court. After respondent perfected his appeal, the court terminated the wardship and closed the case. This intervening event has made it impossible for us to grant respondent effectual relief, and the issue is moot as a result.

¶ 26        In his reply brief, respondent asserts the public-interest and short-duration exceptions to the mootness doctrine apply in the instant case. We find it unnecessary to address respondent's assertion because even if we were to accept its validity, we would still decline to reach the merits of his argument, as he waived it by voluntary relinquishing his right to object to the court's wardship determination. See, *e.g.*, *Center Partners, Ltd. v. Growth Head GP, LLC*,

2012 IL 113107, ¶ 66, 981 N.E.2d 345 (" '[W]aiver' means the voluntary relinquishment of a known right and arises from an affirmative, consensual act consisting of an intentional relinquishment of a known right." (Internal quotation marks omitted.)) At the dispositional hearing, respondent specifically informed the court: "I am in agreement that guardianship and custody should be awarded ***, and if the court believes that making the children wards of the court for a brief moment in order to achieve that goal is appropriate, *I would have no objection to that* ***." (Emphasis added.) By voluntarily and affirmatively stating he had no objection to the minors becoming wards of the court, respondent waived any argument on appeal the court erred in doing that very thing.

¶ 27                                    2. *Guardianship*

¶ 28            Respondent next argues the court erred by granting co-guardianship of the minors to Cooper despite finding her unfit. We decline to reach the merits of respondent's argument because it was not properly preserved for review.

¶ 29            "It is well established that, to preserve an alleged error for appellate review, a party must, even in child custody cases, object at trial and file a written posttrial motion addressing it." *In re William H.*, 407 Ill. App. 3d 858, 869-70, 945 N.E.2d 81, 91 (2011). Here, respondent argued in the trial court he should be awarded guardianship of the minors, but he made no argument Cooper should not also receive guardianship. Respondent did not object when the court granted guardianship to Cooper and did not address the issue in a written posttrial motion. Respondent therefore failed to properly preserve the alleged error for review.

¶ 30                                    III. CONCLUSION

¶ 31            For the reasons stated, we affirm the trial court's judgment.

¶ 32            Affirmed.